FILED
JUN 6 2019
Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. GIOVANNI RODRICK SHAWL, Defendant. | CR 18-74-BLG-SPW<br><br>OPINION AND ORDER |

Before the Court is Giovanni Rodrick Shawl's motion to withdraw his guilty plea to count 5 of the indictment. (Doc. 41). For the following reasons, the Court denies Shawl's motion.

## I. Facts

The following facts are taken from the offer proof, exhibits attached to briefs, the change of plea hearing, motion hearing testimony, and motion hearing exhibits. The motion hearing testimony is cited as (Tr.).

### A. Investigation

In the summer of 2017, Charles Moffet, a detective with the Yellowstone County Sheriff's Office, received information that Giovanni Shawl was distributing methamphetamine from his residence in Billings, Montana. (Tr. at 37:8-38:6). After performing surveillance, Detective Moffet and members of a

1

drug task force conducted a series of successful controlled purchases from Shawl using a confidential informant. (Tr. at 38:1-6); (Doc. 19 at 3-4). During each transaction, Shawl was seen driving a black Chevy Silverado. (Tr. at 38:7-25); (Doc. 19 at 4). The Silverado was registered to Kyla Harper, who law enforcement understood to be Shawl's girlfriend. (Tr. 39:1-3).

On September 20, 2017, the team executed search warrants on Shawl's residence and the Silverado. (Tr. at 39:7-44:3); (Doc. 19 at 4-5). Inside the residence, law enforcement recovered a Pioneer arms 7.62 rifle, .40 caliber ammunition, .40 caliber magazines, marijuana, and a digital scale. (Doc. 19 at 4-5). The team did not find the Silverado's keys inside the residence but one way or another gained access inside the truck. Inside the Silverado, law enforcement found .223 ammunition, a loaded Smith and Wesson .40 caliber pistol, a loaded Taurus 9mm pistol, and 5.4 grams of methamphetamine. (Doc. 19 at 5). Additionally, the Silverado had days old receipts with Shawl's name on them, Shawl's backpack, and construction equipment. (Tr. 43:3-44:3; 65:10-22). Shawl worked construction at the time. (Tr. 65:10-22).

In November 2017, Detective Moffet met with Harper to discuss Shawl's case. (Tr. 44:4-45:16); (Doc. 40 at 1). Harper requested the meeting because she was concerned she would lose her Silverado. (Tr. 44:11-24); (Doc. 40 at 1). At the meeting, Harper told Detective Moffet she purchased a firearm for Shawl as a

gift, which she described as a silver pistol. (Tr. 44:19-45:16; 53:4-22); (Doc. 40 at 1). Detective Moffet believed Harper was referencing the Taurus 9mm found in the Silverado. (Doc. 40 at 1); (Tr. 55:16-21). Harper didn't say anything else of substance at the meeting. (Doc. 40 at 1); (Tr. 44:19-45:16).

Two months later, Harper requested to meet with Detective Moffet again because she said she had information regarding Shawl which would be useful to the investigation. (Tr. 45:20-25); (Doc. 40 at 1). The second meeting, which was recorded, covered a wide range of topics, including the nature of Harper's relationship with Shawl and his family and other potential crimes. (Tr. 46:7-47:12). Relevant to Detective Moffet's investigation of Shawl, Harper stated she had given the Silverado to Shawl so he could start a business. (Tr. 46:13-14; 47:6-12). Harper said she rarely drove the Silverado and it was almost exclusively Shawl's vehicle. (Tr. 47:10-12); (Doc. 48 Ex. B at 13:00-14:30).

## B.  Indictment and defense

On May 17, 2018, Shawl was indicted on four counts of distributing methamphetamine within 1000 feet of a school, one count of possessing a firearm in furtherance of a drug trafficking crime, and one count of being a prohibited person in possession of a firearm. (Doc. 1). The indictment stated the firearm Shawl used in furtherance of a drug trafficking crime was a Taurus 9mm.

Distributing methamphetamine within 1000 feet of a school carries a mandatory minimum one year prison sentence. 21 U.S.C. § 860(a). Possession of a firearm in furtherance of a drug trafficking crime carries a mandatory minimum five-year prison sentence consecutive to any other sentence. 18 U.S.C. § 924(c)(1)(A).

At Shawl's arraignment, Federal Defender David Merchant was appointed to represent him. (Doc. 6). Merchant assigned himself and his support staff tasks to complete in Shawl's defense, such as interviewing witnesses, reviewing video and audio, and parsing the discovery. (Tr. 58:1-8). Merchant spoke with Harper three times. (Tr. 58:20-59:2). During the first conversation, Merchant went over Harper's meetings with Detective Moffet. (Tr. 59:8-60:1). His practice was to read a witness the statement he or she provided to law enforcement and then ask the witness if he or she had any comments or corrections. (Tr. 59:20-60:1). When Merchant read Harper her statements to Detective Moffet that she had given a silver pistol to Shawl as a gift and given the Silverado to Shawl so he could start a business, she did not correct either statement. (Tr. 60:2-15).

Merchant's next conversation with Harper was to advise her to hire an attorney if she was called to testify at trial. (Tr. 60:24-61:6). The final conversation with Harper was a discussion about Shawl's potential prison time. (Tr. 61:12-62:13). Harper did not correct or otherwise indicate her statements to

4

Detective Moffet were inaccurate in either of these conversations. (Tr. 61:7-9; 62:14-17).

Merchant's team put in "a lot of leg work" to suppress the evidence, including figuring out who the confidential informant was, tracking down possible videos of the search, and speaking with neighbors. (Tr. 62:23-63:13). When those efforts came up empty, Merchant examined all the evidence against Shawl. In Merchant's opinion, the large amount of evidence that corroborated the Silverado was Shawl's vehicle made the issue of guilt "pretty straightforward." (Tr. 65:8-22). The defense then transitioned into "damage control" because of the mandatory minimums Shawl was facing. (Tr. 63:10-13).

The United States offered a plea agreement to Shawl, wherein the United States would dismiss three of the distribution charges and the prohibited person in possession of a firearm charge in exchange for Shawl pleading guilty to one charge of distribution within 1000 feet of a school and the possession of a firearm in furtherance of a drug trafficking crime charge. (Tr. 63:14-16); (Doc. 18). Merchant and Shawl discussed the plea agreement at length. (Tr. 63:19-64:5). Shawl was concerned about pleading guilty because of the mandatory minimums. (Tr. 63:24-64:5). Merchant explained to Shawl there was a recent change in the US Attorney's policy that directed prosecutors to charge 924(c) up front, whereas previously the threat of a 924(c) charge was a negotiating tool. (Tr. 64:15-65:7).

Merchant didn't see many ways around the 924(c) charge, but, in an effort to negate the mandatory minimum on the drug charge, he revisited the scene of the crime and used a range finder to remeasure the distance to the school. (Tr. 64:6-9). The distance was within 1000 feet, as charged in the indictment. (Tr. 64:10-12).

Merchant visited Shawl a second time to discuss the plea agreement. (Tr. 64:13-14). During the discussion, Merchant explained the plea agreement was a package deal, that he had to plead guilty to both the distribution charge and the 924(c) charge if he wanted to get the other charges dismissed. (Tr. 6:19-7:6). Shawl understood that to mean if he didn't take the deal, the United States would try him on all counts. (Tr. 6:19-7:6). After the discussion, Shawl initialed each page and signed the plea agreement. (Tr. 64:13-14); (Doc. 18). The plea agreement contained a section titled "Voluntary Plea," which stated Shawl and Merchant agreed that "no threats, promises, or representations have been made to induce [Shawl] to plead guilty, and this agreement is freely and voluntarily endorsed by the parties." (Doc. 18 at 8).

The day before Shawl's change of plea hearing, Merchant visited the jail to go over the offer of proof. (Tr.66:14-16). Through all their discussions, Shawl never expressed his innocence to the 924(c) charge. (Tr. 64:18-65:22; 66:10-21).

C. **Change of plea hearing**

On October 30, 2018, two weeks after signing the plea agreement, Shawl appeared for his change of plea hearing. The Court asked if he understood the hearing's purpose, to which Shawl responded, "To take responsibility for these counts." (Doc. 42-1 at 7). Partway through the plea colloquy, Shawl hesitated. (Doc. 42-1 at 8). The Court asked Shawl if there was something he was uncomfortable about, and he responded, "No, ma'am." (Doc. 42-1 at 9). Shawl replied, "Yes, ma'am," when the Court asked whether he desired to plead guilty. (Doc. 42-1 at 9). Merchant explained Shawl was very nervous because he was pleading guilty to a mandatory minimum of six years between the charges. (Doc. 42-1 at 9). The Court stated it "just want[s] to make sure that you're ready go forward, Mr. Shawl," and the plea colloquy continued. (Doc. 42-1 at 9).

When the Court confirmed Shawl understood he was waiving his right to appeal, he stated, "It's just been the hardest part." (Doc. 42-1 at 14). The Court replied, "To waive your right to appeal, or to plead guilty?" (Doc. 42-1 at 14-15). Shawl said, "It's been – it's – this has been a really heavy and stressful decision to make, that I'm having to make right here right now." (Doc. 42-1 at 15). The Court responded, "Well, I assume you made the decision to change your plea prior to coming into the courtroom today. Is that a correct assumption?" (Doc. 42-1 at 15). Shawl said, "Yes, ma'am." (Doc. 42-1 at 15). The Court asked if anyone had

threatened or coerced him into pleading guilty, and Shawl said, "No, ma'am." (Doc. 42-1 at 15). The colloquy continued. (Doc. 42-1 at 15).

After the United States read its offer of proof, Shawl answered, "No, ma'am," when asked if he disagreed with anything in it. (Doc. 41-2 at 28-29). In regard to the 924(c) charge, the offer of proof stated, "Discovered inside the Silverado were, among others, three boxes of .223 ammunition, a Smith & Wesson .40 caliber pistol with a loaded magazine, a Taurus 9 millimeter pistol with a loaded magazine, bearing serial number TJZ19212, and approximately 5.4 grams of methamphetamine. The firearm was located in the center console near a baggie containing methamphetamine." (Doc. 42-1 at 28); (Doc. 19 at 5). When asked to describe in his own words why he was guilty of the 924(c) charge, Shawl stated, "There was a firearm in a truck that I drove." (Doc. 42-1 at 31). The Court began inquiring about a third firearm listed in the offer of proof which was taken from the house when Merchant chimed in, "Your Honor, Mr. Shawl acknowledges that a rifle was taken out; he has told me that that belonged to somebody else. Mr. Shawl is telling me that the Smith & Wesson, which was found in the center console of the Silverado, Your Honor, next to some drugs and some residential identification, as well as receipts with Mr. Shawl's name on them, that he is responsible for that firearm, Your Honor." (Doc. 42-1 at 31-32). The Court responded, "And is that true, Mr. Shawl?" to which Shawl replied, "Yes ma'am." (Doc. 42-1 at 32). The

Court inquired "[a]nd did you possess that firearm that was in the Silverado, the Smith & Wesson .40 caliber pistol, in furtherance of your drug trafficking crime?" to which Shawl said, "Yes, ma'am." (Doc. 42-1 at 32).

### D. Post-change of plea hearing

On November 4, 2018, Shawl called Harper from jail. (Doc. 48 Ex. A). Shawl read Harper a written summary of her interviews with law enforcement. (Doc. 48 Ex. A 6:20-14:50). The summary included Harper's statement that she had purchased a silver pistol for Shawl as a gift, which detectives believed to be the Taurus 9mm. Harper told Shawl the detectives were lying, that she never said she purchased a silver pistol for him. (Doc. 48 Ex. A at 17:00-19:00).

On November 20, 2018, Shawl sent the Court a letter asking to withdraw his plea and appoint new counsel. (Doc. 24). Merchant filed a motion to withdraw as counsel and for the Court to appoint a Criminal Justice Act Panel member to represent Shawl. (Doc. 25). The Court granted the motion and appointed Brian Fay to represent Shawl. (Doc. 26). On April 8, 2019, eleven days before sentencing, Fay filed a motion to withdraw Shawl's guilty plea. (Doc. 41).

## II. Legal standard

A defendant may withdraw a guilty plea after a district court accepts the plea but before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim P. 11(d)(2)(B). The standard is applied

9

liberally, but the defendant bears the burden. *United States v. Nagra*, 147 F.3d 875, 880 (9th Cir. 1998). Fair and just reasons may include inadequate plea colloquies, newly discovered evidence, claims of innocence, voluntariness of the plea, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea. *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004).

"[T]he decision to allow withdrawal of a plea is solely within the discretion of the district court." *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003).

## III. Discussion

Shawl argues he should be allowed to withdraw his plea because it was involuntary, the plea colloquy was inadequate, and the Harper jail call constitutes newly discovered evidence.

### A. Voluntariness

Shawl argues Merchant pressured him into pleading guilty, as evidenced by their discussions and his hesitations at the change of plea hearing.

A plea is voluntary if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001). A plea of guilty entered by one fully aware of the direct consequences is valid unless it was induced or coerced by

threats or promises which rendered the plea involuntary. *Kaczysnki*, 239 F.3d at 1114 (citations omitted).

The Court disagrees Shawl's plea was involuntary. First, as a factual matter, the Court does not credit Shawl's testimony that he professed his innocence to Merchant. Merchant testified repeatedly Shawl's guilt or innocence was never part of their conversations. Second, the Court does not credit Shawl's claim that Merchant pressured him. Merchant testified Shawl was reluctant to accept the deal because of the mandatory minimums. Due to Shawl's concern, Merchant attempted to whittle away the mandatory minimums. When that didn't work, Merchant explained he didn't see a way around the mandatory minimums but, if Shawl wanted the other charges dismissed, he had to plead guilty to both counts in the plea agreement, which was an accurate summation of the plea agreement offered. With that knowledge, Shawl initialed each page and signed the plea agreement. Two weeks later at the change of plea hearing, Shawl hesitated because, as Merchant explained again, he was nervous about the mandatory minimums. Shawl nonetheless elected to go forward when the Court afforded him every opportunity to not do so. When asked if anyone had threatened or coerced him into pleading guilty, Shawl said, "No, ma'am."

Shawl's concern about the mandatory minimums is understandable because six years is a long time. But the facts demonstrate neither that Merchant pressured

Shawl into accepting a plea deal, nor that Shawl did not fully understand what the plea deal meant. If anything, the repeated conversations about the mandatory minimums and Shawl's hesitation at his change of plea hearing show he fully understood the weight of his decision. Shawl's plea was therefore voluntary.

**B.     Plea colloquy**

Shawl argues his plea colloquy was inadequate because he admitted to possessing a .40 caliber Smith & Wesson in furtherance of a drug trafficking crime but the indictment charges him with possessing a 9mm Taurus.

Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea. Fed. R. Crim. P. 11(b)(3). The purpose of the factual basis requirement is "to ensure that the defendant is not mistaken about whether the conduct he admits to satisfies the elements of the offense charged." *United States v. Mancinas-Flores*, 588 F.3d 677, 682 (9th Cir. 2009). A plea may be rejected for lack of factual basis only if the defendant "denie[s] committing a specific element of the offense or protest[s] his innocence even after demonstrating that he underst[ands] the charge." *United States v. Nickle*, 816 F.3d 1230, 1233 (9th Cir. 2016) (internal quotations and citation omitted).

To satisfy the requirement, there must be "sufficient evidence to support the conclusion that the defendant is guilty." *United States v. Covian-Sandoval*, 462 F.3d 1090, 1093 (9th Cir. 2006). The requirement is usually satisfied through

either an offer of proof or the defendant's own admission, or both. But the defendant need not himself give an in-depth account of his crime or confirm everything in the government's offer of proof is true before the Court may find sufficient evidence of guilt. *Nickle*, 816 F.3d at 1234.

Shawl is incorrect he only admitted to using the .40 caliber Smith & Wesson. The government's offer of proof clearly stated the elements of the 924(c) charge and listed both the .40 caliber Smith & Wesson and the 9mm Taurus. When asked by the Court if Shawl disagreed with anything in the offer of proof, he said "No, ma'am." Shawl therefore impliedly agreed he used the 9mm Taurus. Shawl underscored this admission later when, through his attorney, he disputed using the third firearm listed in the offer of proof, but, crucially, did not dispute using the 9mm Taurus. Although it's true Shawl only explicitly admitted to using the .40 caliber Smith & Wesson, it's also true he impliedly agreed he used the 9mm Taurus, agreed he committed the 924(c) offense, and never protested his innocence. Between the government's offer of proof and Shawl's admissions, there was more than enough evidence of guilt. *Nickle*, 816 F.3d at 1234. The plea colloquy was therefore adequate.

### C. Newly discovered evidence

Shawl argues Harper's statements during the jail phone call constitute newly discovered evidence that provide a fair and just reason to withdraw his plea. The

government argues the evidence is not newly discovered because Harper was already known as a witness to Shawl.

The fair and just standard does not require the defendant to show newly discovered evidence exonerates him or that there is a reasonable probability he would not have been convicted had the case gone to trial. *United States v. Garcia*, 401 F.3d 1008, 1011 (9th Cir. 2005). It is sufficient if the evidence is relevant and favorable enough that it could at least plausibly motivate a reasonable person to not plead guilty had he known about the evidence prior to pleading. *Garcia*, 401 F.3d at 1011-1012.

In *Garcia*, the defendant discovered a witness after he plead guilty who was previously unknown to him. The new witness supplied a sworn declaration that both contradicted another witness's testimony and distanced the defendant from the house where the illegal activity took place. The Ninth Circuit held the new witness's declaration supplied the defendant a fair and just reason to withdraw his plea. 401 F.3d at 1011-1014.

Here, unlike *Garcia*, the evidence is not newly discovered because Harper was known to Shawl and his defense team months prior to his change of plea. Harper spoke with Merchant three times about Shawl's case. During the first conversation, Merchant read Harper her statements to Detective Moffet that she

had given a silver pistol to Shawl as a gift and given the Silverado to Shawl so he could start a business. She agreed they were accurate.

Next, the evidence would not plausibly motivate someone to not plead guilty because Harper's phone call is merely impeachment evidence that is only tangentially related to the issue of guilt. Unlike *Garcia*, where the new witness's sworn declaration conflicted with another witness's statement and placed the defendant away from the crime scene, Harper's phone call contradicts only her own statement that she gave Shawl the 9mm Taurus as a gift. If she testified she purchased the 9mm Taurus for Shawl, Shawl would impeach her with the phone call. If she testified she did not purchase the 9mm Taurus for Shawl, the government would impeach her with her statements to Detective Moffet. In either situation, Harper's credibility is damaged. But whether Harper purchased the 9mm Taurus for Shawl bears little on the issue of guilt. The 9mm Taurus was found, with a loaded magazine, next to methamphetamine in a Silverado that the evidence shows was Shawl's in all but registration only. Perhaps most importantly, Harper's phone call says nothing about the .40 caliber Smith & Wesson found right next to the 9mm Taurus in the Silverado. Shawl explicitly admitted he used the .40 caliber Smith & Wesson in furtherance of a drug trafficking crime. Although the indictment lists only the 9mm Taurus, the government's offer of proof lists both the 9mm Taurus and the .40 caliber Smith & Wesson, indicating the government

believed Shawl had used both firearms in violation of 924(c). Before trial, the government would have been free to obtain a superseding indictment to prove Shawl violated 924(c) with either firearm. Under these facts, Harper's phone call does not supply Shawl a fair and just reason to withdraw his guilty plea.

IV. **Conclusion and order**

Shawl's motion to withdraw his guilty plea (Doc. 41) is denied.

DATED this 6th day of June, 2019.

SUSAN P. WATTERS
United States District Judge